UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| KENESHIA BLAKLEY, individually and on behalf of all others similarly situated, | Case No. 2:22-cv-105-HSO-RHWR<br>FLSA Collective Action |
| v. | |
| MASONITE CORPORATION | Jury Trial Demanded |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, Masonite Corporation's ("Masonite") Kronos-based timekeeping and payroll systems were affected by a service outage in beginning in December 2021.

2. That outage led to problems in timekeeping and payroll throughout Masonite's organization.

3. As a result, Masonite's workers who were not exempt from overtime under federal law were not paid for all overtime hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked during and after the Kronos outage.

4. Keneshia Blakley is one such Masonite worker.

5. Masonite could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the outage were resolved.

6. Instead, Masonite pushed the cost of the Kronos outage onto the most economically vulnerable people in its workforce.

7. Masonite made the economic burden of the Kronos outage fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8. Masonite's failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

9. Blakley brings this lawsuit to recover these unpaid overtime wages and other damages owed by Masonite to herself and Masonite's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos outage, but Masonite's decision to make its own non-exempt employees workers bear the economic burden for the outage.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

12. Blakley worked for Masonite in this District and Division.

## PARTIES

13. **Plaintiff Keneshia Blakley** is a natural person.

14. Blakley is and was, at all relevant times, an employee of Masonite.

15. Blakley has worked for Masonite since April 2021.

16. Blakley represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Masonite, who worked for Masonite at any time during Masonite's Kronos service outage, beginning on or about December 11, 2021, until the time that**

**Masonite regained full access to all Kronos products and services, <u>and</u> resumed normal employee timekeeping and payment operations.**

17. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

18. **Defendant Masonite Corporation ("Masonite")** is a foreign corporation.

19. Masonite conducts business in a systematic and continuous manner throughout Mississippi and this District.

20. Masonite may be served by service upon its registered agent, **Corporate Creations Network, Inc., 232 Market St., #1600, Flowood, MS 39232**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

21. At all relevant times, Masonite was an employer of Blakley within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. At all relevant times, Masonite was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. Masonite was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. During at least the last three years, Masonite has had gross annual sales in excess of $500,000.

25. Masonite was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

26. Masonite employs many workers, including Blakley, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

27. The goods and materials handled, sold, or otherwise worked on by Blakley, and other Masonite employees and that have been moved in interstate commerce include, but are not limited to, building and construction materials, including doors.

## FACTS

28. Masonite designs and manufactures residential and commercial doors.

29. Masonite employs over 15,000 people.

30. Many of Masonite's employees are non-exempt hourly and salaried workers.

31. Since at least 2021, Masonite has used timekeeping software and hardware operated and maintained by Kronos.

32. On or about December 11, 2021, Kronos suffered a disruption in service due to a ransomware attack.

33. The Kronos outage interfered with the ability of its customers, including Masonite, to use Kronos's software and hardware to track hours and pay employees.

34. For at least a portion of time following the Kronos outage, Masonite failed to keep accurate track of the hours that Blakley and Similarly Situated Workers worked.

35. Instead, Masonite has used various methods to estimate the number of hours Blakley and Similarly Situated Workers work in each pay period.

36. As a result of Masonite's failure to accurately track their actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

37. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

38. Blakley is one of the thousands of Masonite employees affected by these pay and timekeeping practices.

39. Blakley works over 40 hours per week each week for Masonite.

40. Blakley has worked 40 hours, or more, each week since the time of the outage in December 2021.

41. But Blakley was not paid the proper overtime premium for all hours worked on time, if at all, for each of these weeks since the onset of the Kronos service disruption, on or about December 11, 2021.

42. Instead of paying Blakley for the hours she actually worked (including overtime hours), Masonite simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Blakley's actual hours worked and regular pay rates, in multiple workweeks.

43. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

44. Masonite knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

45. Masonite knows this because, prior to the Kronos outage, it routinely paid these workers for all overtime hours at the proper overtime rates.

46. Masonite could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

47. Instead of accurately tracking hours and paying employees their overtime, Masonite decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

48. It was feasible for Masonite to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

49. But Masonite chose not to do that.

50. In other words, Masonite pushed the effects of the Kronos outage onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

51. Blakley is just one of the many Masonite employees who had to shoulder the burden of this decision by Masonite.

52. Blakley was a non-exempt hourly employee of Masonite.

53. Blakley regularly worked over 40 hours per week for Masonite.

54. Blakley's normal, pre-Kronos outage hours are reflected in Masonite's records.

55. Since the Kronos outage, Masonite has not paid Blakley on time, if at all, for her actual hours worked each week.

56. Since the outage took place, Masonite has accurately recorded the hours worked by Blakley and its other workers, in multiple workweeks.

57. Masonite was aware of the overtime requirements of the FLSA.

58. Masonite nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Blakley.

59. Masonite's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

60. The full overtime wages owed to Blakley and the Similarly Situated Workers became "unpaid" when the work for Masonite was done—that is, on Blakley and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

61. At the time Masonite failed to pay Blakley and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Masonite became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under federal law.

62. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

63. Any payment made by MBUIS to Blakley or the Similarly Situated Workers that Masonite may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

64. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

65. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Masonite's acts and omissions resulting in the unpaid wages in the first place.

66. Blakley and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Masonite under federal law.

## COLLECTIVE ACTION ALLEGATIONS

67. Numerous individuals were victimized by Masonite's patterns, practices, and policies, which are in willful violation of the FLSA.

68. Based on her experiences and tenure with Masonite, Blakley is aware that Masonite's illegal practices were imposed on the FLSA Collective.

69. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

70. These employees are victims of Masonite's respective unlawful compensation practices and are similarly situated to Blakley in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

71. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

72. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

73. Masonite's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

74. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CAUSE OF ACTION—VIOLATIONS OF THE FLSA

75. Blakley incorporates each allegation set forth in paragraphs 1 to 74.

76. By failing to pay Blakley and the FLSA Collective members overtime at 1.5 times their regular rates, Masonite violated the FLSA. 29 U.S.C. § 207(a).

77. Masonite owes Blakley and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

78. Masonite owes Blakley and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

79. Likewise, Masonite owes Blakley and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours. 29 C.F.R. § 788.305.

80. Masonite knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Blakley and the Collective members the compensation owed to them under the FLSA.

81. Because Masonite knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Masonite owes these wages for at least the past three years.

82. Masonite's failure to pay compensation owed under the FLSA to Blakley and the Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

83. Because Masonite's decision not to pay overtime was not made in good faith, Masonite also owes Blakley and the Collective members an amount equal to the unpaid wages as liquidated damages.

84. Accordingly, Blakley and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including their agreed-upon wages up to 40 hours each week they worked overtime and overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

## RELIEF SOUGHT

Blakley prays for judgment against Masonite as follows:

a. For an order certifying a collective action for the FLSA claims;

b. For an order finding Masonite liable for violations of federal wage laws with respect to Blakley and all FLSA Collective members covered by this case;

c. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Blakley and all FLSA Collective members covered by this case;

d. For a judgment awarding attorneys' fees to Blakley and all FLSA Collective members covered by this case;

e. For a judgment awarding costs of this action to Blakley all FLSA Collective members covered by this case;

f. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Blakley and all FLSA Collective members covered by this case; and

g. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Martin R. Jelliffe*

By: _____

**Martin R. Jelliffe, Esq.**
MSB # 3067
**MORGAN & MORGAN, PLLC**
4450 Old Canton Rd., Ste. 200
Jackson, MS 39211
Phone: 601-503-1676
Fax:   601-503-1625
Email: mjelliffe@forthepeople.com

**Kimberly De Arcangelis, Esq.**
FL Bar No.: 0025871
(*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3383
Email: kimd@forthepeople.com

**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

This the 27th day of July, 2022.

*/s/ Martin R. Jelliffe*
_____
**Martin R. Jelliffe**